**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **LML HOLDINGS, INC.,**<br>       **Plaintiff,**<br>vs.<br>**PACIFIC COAST DISTRIBUTING INC.** *et al.***,**<br>       **Defendants.** | **Case No.: 11-CV-06173 YGR**<br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION OF DEFENDANTS TO DISMISS THE SECOND AMENDED COMPLAINT WITH LEAVE TO AMEND** |

Plaintiff LML Holdings, Inc. ("LML") alleges that Defendants Pacific Coast Distributing, Inc. ("Pacific"), PetSmart, Inc. ("PetSmart"), PetSmart Store Support Group, Inc. ("PSSG"), and Coastal Pet Products, Inc. ("Coastal") (collectively "Defendants") have infringed three of its dog harness patents. LML's four count Second Amended Complaint ("SAC") asserts a single claim of direct patent infringement against each of the four Defendants.

Defendants have filed a motion to dismiss on the grounds that LML (1) pleads only speculative, conclusory allegations as to Defendants Pacific and PSSG; (2) fails to identify the accused product; and (3) fails to plead willful infringement.

Having carefully considered the papers submitted, the pleadings in this action, and the argument of counsel, for the reasons set forth below, the Court hereby **GRANTS IN PART** and **DENIES IN PART** the Motion to Dismiss with leave to amend.

**I.    BACKGROUND**

LML is the owner of three patents that claim, among other things, an animal training apparatus for dogs in the form of a harness that incorporates features to enhance the training and control of the animal.[1] SAC ¶ 10. The LML SENS-ible™ product implements the design that is the subject matter of the Patents at Issue. SAC ¶ 14. LML alleges that each Defendant has infringed the

---

[1] Specifically, U.S. Patent Nos. 7,886,699, 7,387,087, and 7,107,939 (jointly called the "Patents at Issue").

Patents at Issue by making, using, importing, distributing, offering for sale, and selling a walking harness that is a knock-off of its SENS-ible™ product, marketed under the name "Top Paw" (the "Top Paw Product"). SAC ¶¶ 12, 27, 32, 36, 40. LML seeks damages, injunctive relief, and costs.

LML additionally alleges that this is an extraordinary case warranting enhanced damages for willful infringement. The SAC alleges that the Defendants directly or indirectly knew about its pending patent applications and infringed the Patents at Issue despite an objectively high likelihood that their actions constituted infringement. Specifically, in December of 2004, an LML affiliate gave notice to PetSmart of the pending patent applications that resulted in the issuance of the Patents at Issue, and also provided PetSmart with a sample of the LML SENS-ible™ product that implemented the inventions that eventually became the Patents at Issue. Moreover, LML alleges that "Pacific, PetSmart and PSSG are affiliated in such a way that the knowledge and conduct attributable to any one of those defendants should also be attributable to each of the others." *Id.* ¶ 24. Despite knowledge of the pending patent applications, each Defendant allegedly has made and/or used and/or imported and/or distributed and/or offered for sale and/or sold, and/or continues to make and/or use and/or import and/or distribute and/or offer for sale, and/or sell, certain products in the United States that infringe on the Patents at Issue. LML further alleges that each Defendant has actual notice of the Patents at Issue through service of the original complaint in December 2011, and despite this notice, each of the Defendants has persisted with its infringing conduct, has refused to cease such infringing conduct, and has continued to defend against this action.

## II. DISCUSSION

### A. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *Ileto v. Glock. Inc.*, 349 F.3d 1191, 1199-1200 (9th Cir. 2003). Review is limited to the contents of the complaint, and exhibits attached thereto. *See Hal Roach Studios. Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1989). To survive a motion to dismiss, a complaint must contain enough factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Legally conclusory statements, not supported by actual factual allegations, are not entitled to the assumption of truth. *Id.* A plaintiff's

obligation to provide the grounds of its entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and quotations omitted). Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id.*

### B. INFRINGEMENT ALLEGATIONS AGAINST DEFENDANTS PACIFIC AND PSSG

Defendants Pacific and PSSG, only, argue that the SAC contains only a speculative, conclusory allegation with respect to their specific conduct relative to three LML patents. The SAC alleges:

> Each of the defendants has made, used, imported, distributed, offered for sale and/or sold, and/or continues to make, use, import, distribute, offer for sale, and/or sell, certain products in the United States that infringe on the Patents at Issue, including but not limited to the Top Paw Product, as alleged in paragraph 13, above. Such infringing use includes, but is not limited to, the importation, distribution and offering for sale and selling the Top Paw Product to, among others, PetSmart.

SAC ¶¶ 12, 32, and 36.

Defendants argue that these allegations "all but parrot the statute"[2] and consist of pure speculation based solely on the companies' association with PetSmart. Defs. Br. 3 (citing SAC ¶ 24). LML argues that it believes that both Pacific and PSSG have infringed its products by making, using, importing, distributing, offering for sale, selling and on this basis it has alleged that both Defendants engaged in such infringing conduct.

The inquiry here, however, is whether the facts alleged, if proven, would establish the Defendants' liability for infringement and not whether the Defendants have an adequate basis to allege these facts. Whether it is doubtful or even unlikely that each of the four Defendants makes, uses, imports, distributes, and sells the accused product(s), this does not render the allegations implausible. *See Iqbal*, *supra*, 556 U.S. at 678 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.") (citing *Twombly*, *supra*, 550 U.S. at 556). Rather, here, the allegations focus on the Defendants' role

---

[2] The statute provides that "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." 35 U.S.C. § 271.

in multiple parts of the supply and distribution chain. These allegations sufficiently put these Defendants on notice of their alleged role and are adequate under federal pleading standards.

Based on the foregoing analysis, the Motion to Dismiss Counts II and III of the SAC is **DENIED**.

### C. THE ACCUSED PRODUCT OR PRODUCTS

Next, Defendants argue that they have not been put on notice of the accused product or products because (1) there is no picture, packaging, or model number identified in the SAC; and (2) there are multiple products marketed under the name "Top Paw." The SAC alleges that LML provided Defendants with these particulars concerning the accused product(s) on December 17, 2012. SAC ¶ 17.[3] Additionally, the SAC alleges how the Top Paw Product implements the elements of each claim of the Patents at Issue so as to infringe the patents.

According to Defendants, because "Top Paw" is a brand, the SAC alleges infringement by nothing more than a brand. Mot. 3-4. Based upon the allegations in the SAC, the Court understands there is only one Top Paw Product. *See* SAC ¶ 12 (describing the accused products as "certain products . . . including, but not limited to a walking harness product that is marketed under the name 'Top Paw'"). The Court requested clarification on this point at oral argument; counsel agreed that there is only one "Top Paw Product," but that it has different sizes. Plaintiff's counsel further clarified that currently LML is aware of only one product – the Top Paw Product – that it believes infringes on the Patents in Issue.[4] If LML chooses to file a Third Amended Complaint, it should clarify which product(s) it believes infringes on the Patents at Issue and accuse only that product. However, the inquiry here is whether the facts alleged state a cause of action for infringement.

Based on the foregoing analysis, this ground for dismissal of LML's claims for patent infringement is **DENIED**.

---

[3] Specifically, "[o]n December 16, 2012 counsel for Pacific, PetSmart and PSSG asked counsel for LML to provide particulars of the accused Top Paw Product to him, and the following day counsel for LML provided a copy of the packaging of the Top Paw Product that included a diagram depicting the infringement by the Top Paw Product in the respects described in" the Complaint. SAC ¶ 17.

[4] Apparently the confusion stemmed from the allegation that "certain products" infringed on the Patents at Issue but the SAC identified only the Top Paw Product as infringing. After Plaintiff's counsel clarified that LML is accusing only this one product of infringement, Defendants' counsel stated that, if there is only one accused product, Defendants can answer the SAC.

### D. WILLFUL INFRINGEMENT

Defendants challenge the claim for willful infringement on the grounds that LML has not identified: (1) "pre-filing" knowledge of the Patents at Issue; or (2) post-filing conduct that would support a finding of willful infringement. LML disagrees and argues that the SAC adequately alleges that Defendants' infringement has been willful and with full knowledge of the Patents at Issue making this an exceptional case pursuant to 35 U.S.C. § 284.

Section 284 permits a court to "increase the damages up to three times the amount found or assessed." 35 U.S.C. § 284. The Federal Circuit has held that a finding of willful infringement is a prerequisite to the award of enhanced damages under Section 284. *See in re Seagate Technology, LLC*, 497 F.3d 1360, 1368 (Fed. Cir. 2007) (*en banc*). Willfulness requires that "the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent." *Id.* at 1371. "[T]his objectively-defined risk . . . was either known or so obvious that it should have been known to the accused infringer." *Id*. Thus, to state a claim for willful infringement here, LML must allege facts from which it may be concluded that the Defendants knew of the Patents at Issue or it was so obvious that it should have been known, and there was an objectively high likelihood that their actions constituted infringement of a valid patent. *Id.*; *State Industries, Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1236 (Fed. Cir. 1985).

*1. Knowledge of patent applications versus the patents themselves.*

The issue here is whether alleging knowledge of a pending patent application is sufficient to state a claim for willfulness.

The SAC alleges that "[i]n December, 2004 LML affiliate corporation Softouch Concepts, Inc. ('Softouch') gave written notice to PetSmart of the pendency of patent applications numbers 60/392,746 and 10/341,930 that resulted in the issuance of the Patents at Issue." Defendants argue that under *Seagate*, willfulness requires that "the infringer acted despite an objectively high likelihood that its actions constituted infringement of a *valid* patent," but knowledge of patent application fails to allege "pre-filing" knowledge of a valid patent. LML counters that the allegations of willfulness may be based solely upon knowledge that a patent application was filed.

5

District Courts have regularly required that plaintiffs plead knowledge of the actual patents at issue and not mere knowledge of the pendency of patent applications. *E.g.*, *IpVenture, Inc. v. Cello Partnership*, No. 10-CV-04755-JSW, 2011 WL 207978, at *2 (N.D. Cal. Jan. 21, 2011) (dismissing claim for willful infringement where complaint provided "no facts to support the claim that defendants actually had knowledge of the issued patent.").[5] This is because "[a] 'patent pending' notice gives one no knowledge whatsoever . . . . Filing an application is no guarantee any patent will issue and a very substantial percentage of applications never result in patents. What the scope of claims in patents that do issue will be is something totally unforeseeable." *A.O. Smith Corp.*, *supra*, 751 F.2d at 1236.

Here, LML does not allege that Defendants knew the patents issued because they conducted a search of whether the patents issued, but rather, LML alleges that the Defendants acted recklessly or objectively unreasonably because they did not conduct a search. According to LML, PetSmart was on notice of pending patent applications (and attributes this knowledge to Pacific and PSSG) and therefore, PetSmart, Pacific, and PSSG needed to inquire into whether those patent applications were granted. Thus, LML argues, the facts alleged show the risk of infringement was "so obvious that it should have been known to the accused infringer," and therefore, Defendants' infringement was willful because they engaged in infringing acts despite this objectively high likelihood that their actions constituted infringement. Pl.'s Opp'n 8 (quoting *Seagate*, *supra*, at 1373). LML does not cite any law to support its proposition that it is objectively unreasonable for a company to learn of a patent application and not conduct a search of whether the patent issued.[6] Nor has LML explained

---

[5] *See also*, *Sealant Systems Int'l, Inc. v. TEK Global*, 11-CV-00774-PSG, 2012 WL 13662, at *3 (N.D. Cal. Jan. 4, 2012) (judgment on the pleadings); *Solannex, Inc. v. MiaSole*, No. 11-CV-00171-PSG, 2011 WL 4021558, at *3-4 (N.D. Cal. Sep. 9, 2011) ("[w]hat Solannex fails to allege in the second amended complaint, however, is that MiaSole had any pre-suit knowledge of the [patent-in-suit] or that its conduct rises to the level of 'objective recklessness' required to support an allegation of willful infringement"); *Bell Helicopter Textron, Inc. v. American Eurocopter, LLC*, 2010 WL 1946336, at *8 (N.D. Tex. May 12, 2010), *Webmap Techs., LLC v. Google, Inc.*, 2010 WL 3768097, at *4 (E.D. Tex. Sep. 10, 2010) (dismissing claim of willful infringement based solely on defendant's post-filing knowledge of the accused patent and failure to abate its alleged infringement); *Anascape, Ltd. v. Microsoft Corp.*, 2008 WL 7182476 (E.D. Tex. Apr. 25, 2008), *rev'd on other grounds*, *Anascape, Ltd. v. Nintendo of Am., Inc.*, 601 F.3d 1333 (Fed. Cir. 2010) (pre-filing knowledge of a patent application did not create a triable issue of fact on the issue of pre-filing willful infringement).

[6] Instead, LML attempts to distinguish Defendants' cases. It argues that *IpVenture v. Celloco Partnership*, *supra*, and *Bell Helicopter Textron v. American Eurocopter*, *supra*, involved bare and conclusory allegations

6

how knowledge of a patent application creates an objectively high likelihood that the accused infringer's subsequent actions constitute infringement of a valid patent. It simply argues that a reasonable jury could conclude that Defendants acted unreasonably. Mere knowledge of patent applications, without more, does not allege an objectively high likelihood that Defendants' actions constitute infringement of a valid patent.

Based on the foregoing analysis, the Court concludes that LML has not adequately pled a claim for willful infringement based on pre-filing conduct.

*2.     Willfulness based on conduct post-filing of the complaint.*

The final issue is whether LML can seek enhanced damages based upon the Defendants' post-filing conduct. A preliminary injunction generally provides an adequate remedy to combat an accused infringer's post-filing willful infringement. *Seagate*, *supra*, 497 F.3d at 1372. "A patentee who does not attempt to stop an accused infringer's activities [by moving for a preliminary injunction] should not be allowed to accrue enhanced damages based solely on the infringer's post-filing conduct." *Id.*; *see Anascape*, *supra*, 2008 WL 7182476 (patentee who did not move for preliminary injunction was not entitled to benefit from its lack of diligence by obtaining enhanced damages for willfulness during the post-filing period).

Circumstances where an infringer's post-filing conduct was found to be willful involved some material change that could create an objectively high likelihood of infringing a valid patent, such as a patent surviving a reexamination proceeding without narrowed claims. *See St. Clair Intellectual Prop. Consultants, Inc. v. Palm, Inc.*, 2009 WL 1649751, at *1 (D. Del. Jun. 10, 2009) (cited in *Webmap Technologies, LLC v. Google, Inc.*, 2010 WL 3768097, at *2, 3 (E.D. Tex. Sep. 10, 2010). Otherwise, the accused infringer must have pre-filing knowledge of the patents at issue before the patentee can accrue enhanced damages based on post-filing willful conduct. *Id.* at *1-2.

Here, the circumstance that LML identifies to substantiate a willfulness claim is the litigation itself, including service of the initial complaint, amendment of the complaint, and Defendants' filing

---

of willful infringement. LML distinguishes *Solannex v. Miasole*, *supra*, on the basis that the court dismissed the action because the complaint failed to allege that the defendant had pre-suit knowledge of the patent "or that its conduct rises to the level of 'objective recklessness' required to support an allegation of willful infringement." Pl.'s Opp'n 9-10.

7

of a Rule 12(b)(6) motion to dismiss. In essence, LML alleges that Defendants' decision to defend this case on the merits demonstrates willfulness. LML also quotes *dicta* in *Seagate*, and argues that although "in ordinary circumstances, willfulness will depend on an infringer's prelitigation conduct," the phrase "in ordinary circumstances" demonstrates that depending on the circumstances, an infringer's post-filing conduct alone may constitute willfulness. Pl.'s Opp'n 10.[7] Moreover, LML argues that there is no *per se* rule that post-filing notification of the patent at issue cannot form the basis for a finding of willfulness. Thus, LML argues it is not precluded from relying solely upon post-filing conduct to support its allegations of willfulness. Although technically a party may not be *precluded* from relying solely upon post-filing conduct to support a claim of willfulness, LML has failed to allege facts that distinguish this case from the ordinary case where "willfulness will depend on an infringer's prelitigation conduct."

LML cannot cite a single case in which the fact that a suit was filed was grounds for a finding that an infringer's post-filing conduct alone of willfulness. Instead, LML cites *Ralston Purina Co. v. Far-Mar-Co, Inc.*, 772 F.2d 1570, 1577 (Fed. Cir. 1985) (infringer's pre-filing infringement was willful where patentee offered a license, infringer immediately declined the license, and patentee then filed suit approximately 60 days after infringer refused to take a license), for the proposition that there is no minimum time-period for enhanced damages to accrue. The case is not on point. In *Ralston Purina*, the infringer had actual notice of the patent before the lawsuit was filed and it was the defendant's pre-filing conduct that was found to be willful.

Knowledge of the Patents at Issue from service of the initial complaint does not warrant imposition of enhanced damages for willful conduct based solely upon post-filing conduct. LML suggests that since it amended its complaint subsequent to serving the original complaint, Defendants

---

[7] The passage provides more fully that:

> . . . in ordinary circumstances, willfulness will depend on an infringer's prelitigation conduct. . . [W]hen a complaint is filed, a patentee must have a good faith basis for alleging willful infringement. So a willfulness claim asserted in the original complaint must necessarily be grounded exclusively in the accused infringer's pre-filing conduct. By contrast, when an accused infringer's post-filing conduct is reckless, a patentee can move for a preliminary injunction, which generally provides an adequate remedy for combating post-filing willful infringement.

*Seagate*, *supra*, 497 F.3d at 1372.

8

have been on notice that they are infringing the Patents at Issue, and because they continue to infringe on the Patents at Issue, the infringement is willful. However, the SAC also alleges that Defendants investigated the allegations of infringement in LML's complaint and concluded that the Patents at Issue are invalid. SAC ¶¶ 21, 23. Defendants argue that LML may disagree with their conclusion that Patents at Issue are invalid, but this does not plausibly allege "an objectively high likelihood that [Defendants'] actions constitute[] infringement of a valid patent." *Seagate*, *supra*, 497 F.3d at 1371. The Court agrees.

Without more, willfulness cannot be based exclusively on the accused infringers' post-filing conduct in this case. If discovery uncovers facts that would give rise to allegations of willful infringement, then LML may seek to amend its complaint. However, LML has not adequately pled a claim for willful infringement based on post-filing conduct.

Based on the foregoing analysis, the Court concludes that LML fails to adequately plead a claim for willful infringement. Therefore, the Court **GRANTS** the motion to dismiss the claim for willful infringement.

## III. CONCLUSION

Based on the foregoing analysis, the Court **GRANTS IN PART** and **DENIES IN PART** the Motion to Dismiss **WITH LEAVE TO AMEND**.

No later than June 20, 2012, LML shall file either (i) a Third Amended Complaint; or (ii) a statement that it will not file a Third Amended Complaint.

Defendants' response(s) will be due 21 days after LML files one of the above.

This Order Terminates Docket Number 24.

**IT IS SO ORDERED.**

Date: May 30, 2012

                                          **YVONNE GONZALEZ ROGERS**
                                          **UNITED STATES DISTRICT COURT JUDGE**